**SO ORDERED.**

**SIGNED this 10 day of May, 2010.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

**ROBERT D. BOWEN**

**DEBTOR**

CHAPTER 13
CASE NO. 09-06106-8-RDD

**AMENDED ORDER**

Pending before the Court is the Motion for Relief from the Automatic Stay filed by Wanda C. Bowen on February 17, 2010 (the "Motion") and the Response in Opposition to the Motion for Relief from the Automatic Stay filed by Robert D. Bowen (the "Debtor") on February 18, 2010 (the "Response"). The Court conducted a hearing in Wilson, North Carolina on March 9, 2010.[1]

Pursuant to the Motion, Mrs. Bowen requests that the Court grant Mrs. Bowen relief from the automatic stay so that she can proceed with her legal remedies in Martin County District Court based on the Debtor's alleged failure to pay alimony as ordered, and to have a qualified domestic relations order ("QDRO") entered.

---

[1] At the conclusion of the hearing, the Court requested each party to submit a memorandum of law in support of their positions. Counsel for Mrs. Bowen filed a memorandum on March 15, 2010 and counsel for the Debtor filed a responsive brief on March 24, 2010. In reaching its decision, the Court also considered the arguments set forth in these memoranda.

There is no dispute between the parties that the state court awarded Mrs. Bowen a marital percentage of 42.775% of the pension benefits accrued in the Weyerhaeuser retirement pension benefits of the Debtor. Mrs. Bowen asserts this debt is within the definition of "domestic support obligation," as set forth in the Bankruptcy Code and therefore, is nondischargeable. However, the Debtor disputes that the award of the 42.775% of his pension, which was to be paid on a monthly basis to Mrs. Bowen, is a support obligation. The Debtor asserts this distribution is a property distribution that the Debtor may discharge in his chapter 13 case.

The defined term, "domestic support obligation" was added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 § 211 (April 20, 2005). Section 101(14A) defines "Domestic support obligation" as a debt that is –

> (A) owed to or recoverable by —
>    (i) a spouse, former spouse or child of the debtor or such child's parents...
> (B) in the nature of alimony, maintenance, or support of such spouse...without regard to whether such debt is expressly or so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>    (i) a separation agreement, divorce decree, or property settlement agreement;
>    (ii) an order of a court of record;
>    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity...

Pursuant to Section 1322(a)(2) and Section 1325(a)(1), a chapter 13 plan may not be confirmed unless all domestic support obligations are paid in full. Such obligations, defined as domestic support obligations, are nondischargeable pursuant to Section 523(a)(5). However in a chapter 13 case, property settlements may be discharged as provided for in Section 523(a)(15), which is not excepted from the chapter 13 discharge under Section 1328(a)(2).

Therefore, the question before the court is whether the claim of Mrs. Bowen on the Weyerhaeuser pension retirement benefits is in the nature of support which is nondischargeable or, whether her claim is in the nature of a property settlement as defined in Section 523(a)(15) that may be discharged upon completion of the Debtor's chapter 13 plan pursuant to Section 1328(a)(2).

Section 101(14A) specifically notes that the debt may not be expressly noted or designated as support and, therefore, an inquiry as to the intention of the parties or the state court judge is required. This court has previously held that if the claim arises from a court order, factors a court should consider in determining the parties' intent to for construing a separation agreement may also be applicable when construing the division of assets and support awarded by a state court judge. *In re Bennett*, Adv. Pro. N. 08-06098-8-JRL at 3 (Bankr. E.D.N.C. February 9, 2009) (citations omitted). Some relevant factors include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

*Id.* (citations omitted). As such, the Court must specifically consider the findings made by the Honorable Michael A. Paul in the state court proceedings.

## STATE COURT PROCEEDINGS

On February 19-20, 2009, the Honorable Michael A. Paul, District Court Judge for the State of North Carolina in Martin County, conducted a hearing in connection with the domestic proceedings in *Bowen v. Bowen*, Case #06-CvD-415. An order captioned as Permanent Order

3

(Alimony) (the "Alimony Order") and a judgment captioned as Judgment (Equitable Distribution) (the "ED Order") were entered by Judge Paul on August 3, 2009, *nunc pro tunc* to February 20, 2009.[2]

Judge Paul made the following **findings of fact** in the ED Order:

A. The parties were married on September 27, 1968 and lived together as husband and wife until early 2004, when they "initially" separated. Two children were born of the marriage, but they are now respectively thirty-three (33) and forty (40) years of age.

B. The parties reconciled in early February 2006 and lived together as husband and wife until the last week of July 2006, when they separated.

C. Plaintiff filed for domestic violence relief, divorce from bed and board, post separation support, alimony, equitable distribution, attorney's fees, and injunctive relief on January 5, 2004 in Martin County Case #04-CvD-3.

D. An Order was entered in Martin County Case #04-CvD-3 on February 19, 2004 that distributed portions of the marital estate and awarded post-petition support/alimony to the Plaintiff – originally in the amount of $1,500 per month.

E. However, on or about February 2006, the parties reconciled for a relatively brief period of approximately three months. Defendant received a lump sum payment for his early retirement about one week before the reconciliation.

---

[2] Plaintiff in the state court proceeding is the movant in this case, Wanda C. Bowen. Defendant in the state court action is the debtor and respondent in this case, Robert C. Bowen.

F. On April 20, 2006, during the "reconciliation" period, Plaintiff dismissed her lawsuit; she testified during this hearing that she was asked to do so to show her love for Defendant.

G. On July 10, 2006, Plaintiff refiled essentially the same claims in this action as in the one she had previously dismissed. Plaintiff requested an unequal distribution in her favor pursuant to the factors enumerated in N.C.G.S. § 50-20 *et. seq.* On April 30, 2007, this Court ordered that Defendant pay Plaintiff $500.00 per month in post separation support for reasons stated in that Order.

H. On October 4, 2007, the parties were divorced, the date of separation stated in the divorce decree is the "last week of July, 2006."

I. During the entire marriage, the Defendant worked for Weyerhaeuser. Defendant began working at Weyerhaeuser on May 31, 1962 and he retired from Weyerhaeuser due to the plant's closing on or about March 30, 2006. He had received notification of the closing prior to the "reconciliation" in the February 2006. His income during his last year there exceeded $60,000 (or $5,000 per month) though this amount did reflect overtime payments. Defendant received an early retirement payment between $30,000 and $40,000 in March of 2006.

J. Currently, Defendant receives a retirement income from Weyerhaeuser in the amount of $1,595.42 per month.

K. Given that Defendant's employment with Weyerhaeuser began before the marriage, the Court finds that 85.55% of that retirement account is marital. Further, the Court finds that the present value of the entire retirement account is $142,615.67 taking

into account the Defendant's age, life expectancy, and applying a discount rate of 5%. Hence, the present value of the marital portion of the asset is $122,007.13. These valuations and percentages were stipulated to by the parties' counsel during the hearing.

L. In addition, the Defendant receives Social Security in the amount of $1,446.00, from which $199.56 is deducted for Medicare.

M. Altogether, Defendant receives $2,841.86 income on a monthly basis.

N. Defendant is 65 years of age with no life-altering medical condition. He has received some settlement checks for asbestosis, which apparently did not affect his ability to work.

O. In contrast, the Plaintiff receives $157.00 per month in Social Security supplemental income. Though Plaintiff is clearly physically disabled from working as a result of a number of serious medical problems (she has a pacemaker installed in 2008), she has never really worked a full-time job during the thirty-nine years they were married. Hence, she does not qualify for regular Social Security disability.

P. In addition, it is clear to the Court (who has knowledge of Plaintiff from her other involvement in the legal system) that her mental faculties are such that she is neither capable of gainful employment nor able to handle the family finances as was testified to by Defendant. In fact, during the Plaintiff's testimony she exhibited great difficulty with the English language and she has very little education.

Q. The Plaintiff has no other sources of income, and she does not have any assets of appreciable value that are not marital.

R. The parties own the marital residence located at 1691 Bonnie Best Rd., Williamston, North Carolina. The fair market value of the real estate as of the valuation date was stipulated by the parties to be $81,120.00. Also, a contiguous lot had a stipulated value of $8,150.00. Hence, the total value of the marital home was stipulated to be $89,270.00. This asset was entirely marital in nature.

S. The debt on the marital home was paid in full by the year 2000, approximately four years before initial separation.

T. Plaintiff has been living in the marital home since separation. Both children were grown and had moved away by that time as well.

U. Computations are not necessary to establish that Plaintiff cannot subsist on the $157.00 per month that she currently receives. Were it not for charity from family and friends and food stamps, Plaintiff would be unable to even feed herself as, indeed, she receives gifts of groceries and meals. Moreover, Plaintiff is not eligible for Social Security until she reaches the age of 62, at which time she can begin drawing benefits based on Defendant's income.

V. In contrast, since the separation, Defendant, according to his own testimony, has lived with his father and then with his daughter. Defendant testified that he paid the electric bill while living with his daughter but was able to provide documentation showing that he paid the bill only once. Hence, Defendant's monthly living expenses are quite low.

W. The recurring expenses established by Defendant were his car payment of $312.00 per month, his car insurance ($62.00 per month), his Medicare ($96.40 per month),

7

        his BlueCross Blue Shield Supplement ($136.00 per month), and his prescriptions ($37.00 per month). Hence, Defendant's monthly income exceeds his documented monthly expenses by $2,000.00 per month.

X. Perhaps the most significant aspect of this case relates to marital assets the parties used to have. Before the "reconciliation" in 2006, Defendant had significant sums in a separate Vanguard retirement account (not his Weyerhaeuser pension) from which Defendant made a withdrawal of $33,416.00 on May 5, 2006. On March 31, 2006, Defendant received a payment from Weyerhaeuser (apparently some was for early retirement) of $55,557.00. In 2003 and 2004, Defendant received well over $25,000 in asbestosis settlement payments. On October 29, 2003 (about two months before the first separation), Defendant withdrew $39,600.00 from the Vanguard retirement account. That same month, Defendant took a loan for $10,000.00. In April of 2004, Defendant also withdrew $10,000.00 from a Weyerhaeuser Credit Union account. In February of 2004, Defendant withdrew another $20,000.00 from the Vanguard account. Though after separation, Defendant received a personal injury settlement in 2007 for $20,000.00. This list is illustrative and omits several other withdrawals. During this period of time, the parties had no house payment and no minor children. In addition, Defendant was receiving his regular full-time income from his employment at Weyerhaeuser.

Y. Defendant testified that he currently has only about $300.00 in a bank account offered no credible explanation for where all the money went. Defendant testified some of the money went for home repairs. However, Defendant provides evidence

     of home repairs totaling approximately $10,000.00 in 2003 and approximately $5,000.00 in 2006 for a heat pump.

Z. Since the date of separation, Plaintiff has resided in the marital residence and without the marital residence Plaintiff would have no place to live and has no funds available with which to pay for any suitable living quarters.

AA. Plaintiff is, and was throughout the marriage, actually and substantially dependent upon Defendant for her support and indeed the very necessities of life.

With the exception of sections G, I and Z, each of the above findings of fact enunciated by Judge Paul were included in substantially similar form in the Alimony Order. The Alimony Order also required monthly alimony of $700.00 to be paid to Mrs. Bowen.[3]

Judge Paul also awarded Wanda Bowen the marital home, the contiguous lot, and the household furnishings. In addition, Mrs. Bowen was to receive one half of 85.55% of the value of Mr. Bowen's monthly Weyerhaeuser pension benefits. More specifically, Judge Paul directed that Mrs. Bowen was to receive a monthly payment of 42.775% of all benefits received (net of taxes) to be effective as of March 1, 2009.[4] That amount was to be paid on a monthly basis to Mrs. Bowen

---

[3] The Alimony Order required the Defendant to pay Plaintiff's attorney fees of $6,500.00. The Court makes no finding as to what portion of this attorney fee award is in the nature of alimony, maintenance or support or is in the nature of a property settlement.

[4] Mr. Bowen receives a monthly Weyerhaeuser retirement pension benefit of $1,595.42; 42.755% of that amount would be $682.44. This amount plus the $700.00 per month in alimony and the $157.00 per month in Social Security benefits would provide Mrs. Bowen with a monthly income of $1,539.44. Mr. Bowen's net monthly income would be $1,459.42, calculated as follows: $2,841.86 less $1,382.44 to Mrs. Bowen for the the $700.00 for the alimony payment and $682.44 monthly payment from the Weyerhaeuser retirement pension benefit.

until the QDRO takes effect. All back amounts were due within one week of the entry of the ED Order. Lastly, Judge Paul also retained jurisdiction to the extent necessary to enter QDROs or other appropriate orders to transfer retirement funds in a tax free manner.

Judge Paul clearly intended to equalize the property distribution and the monthly income to be received by each spouse. Mrs. Bowen was awarded the marital residence, the contiguous lot, and the household furnishings with a stipulated value of $89,200.00 to offset the $88,973.00 in withdrawals obtained by Mr. Bowen from his Vanguard retirement benefits account and Weyerhaeuser in 2006, which were marital property.

Although Mr. Bowen argues that the Weyerhaeuser retirement pension award is part of the ED Order, the labels used in a dissolution judgment may offer some probative value but a court is not bound by them. *In re Bornemann*, 2008 U.S. Dist. LEXIS 22473 (S.D. Il. 2008). Considering the specific findings by Judge Paul, it is clear that he intended that the award of a percentage of the Weyerhaeuser retirement pension benefit was to be in the nature of support. The state court orders made specific findings that she was unable to meet her needs without the assistance of her husband. Judge Paul went to great lengths to describe the disparity of the parties income and the financial condition of Mrs. Bowen. The payments were to be paid on a monthly basis as opposed to a lump sum and are intended to assist Mrs. Bowen with her basic living expenses. The ED Order specifically found that Mrs. Bowen is, and was through the marriage, actually and substantially dependent on Mr. Bowen for her support and indeed the very necessities of life.

Furthermore, the Debtor himself recognized this debt was a "domestic support obligation," which as defined in Section 101(14A) is in the nature of alimony, maintenance, or support and is nondischargeable pursuant to Section 523(a)(5). On Schedule E, Mr. Bowen lists the claim of

Wanda C. Bowen as "QDRO-domestic support obligations" and the date of the claim, the amount of the claim, and the amount entitled to priority are all listed as unknown. The box on the cover sheet to Schedule E is marked that he has Domestic Support Obligations, as defined by the Bankruptcy Code. This admission in his Schedules demonstrates that the QDRO was a domestic support obligation and shows that Mr. Bowen understood that the pension award by Judge Paul was a domestic support obligation in the nature of support, as opposed to a property settlement.

The court having reached its conclusion that this debt is, in fact, a domestic support obligation as defined by the Bankruptcy Code now turns to whether the order establishing such obligation was appropriately entered by Judge Paul eleven (11) days after the petition date.

The Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on July 23, 2009. The Alimony Order and the ED Order were not entered by Judge Paul until August 3, 2009. Counsel for the Debtor argued that the entry of the orders violated the automatic stay. However, Section 362(b)(2)(A)(ii) provides that the automatic stay does not apply to a civil proceeding where a party is seeking the establishment or modification of an order for domestic support obligation. The orders entered by Judge Paul established the domestic support obligation stemming from the Weyerhaeuser retirement pension benefits and were entered *nunc pro tunc* relating back to February 2009. Therefore, since these orders established such obligation, the automatic stay would not have applied and the orders were appropriately entered.

Furthermore, Mrs. Bowen is entitled to proceed in state court with regard to her collection of the domestic support obligation related to Mr. Bowen's Weyerhaeuser retirement pension benefits. Section 362(b)(2)(B) provides that the filing of a petition does not operate as a stay "of the collection of a domestic support obligation from property that is not property of the estate."

The Weyerhaeuser pension was omitted from the schedules filed by the Debtor. Section 541(c)(2) excepts benefits from an ERISA-qualified retirement plan from property of the estate. The plain language of this section excludes a debtor's interest in a plan or trust that contains a transfer restriction enforceable under nonbankruptcy law. *Patterson v. Shumate,* 504 U.S. 753 (1992). Since the Debtor omitted the Weyerhaeuser pension from his Schedules and a QDRO is required to establish Mrs. Bowen's right to payment from the Weyerhaeuser retirement pension benefits, Section 362(b)(2)(A) applies in this case. As such, the Weyerhaeuser retirement pension benefits are not property of the estate and the automatic stay does not stay Mrs. Bowen from seeking to have the QDRO entered by the state court.

Therefore, Mrs. Bowen may proceed with the state court proceeding, including obtaining a QDRO, to have paragraph 2 on page 10 of the ED Order[5] enforced and allow Mrs. Bowen to collect her domestic support obligation. Even though the motion filed requested relief from the automatic stay, this order confirms that the enforcement of paragraph 2 on page 10 of the ED Order is not stayed by the automatic stay pursuant to 11 U.S.C. § 362(b)(2)(A)(ii) and 11 U.S.C. § 362(b)(2)(B).

Counsel for the movant, David C. Sutton, is awarded an attorney's fee of $1,500.00 for the prosecution of this motion for relief from stay. Said fee shall be paid through the chapter 13 plan of reorganization and the plan shall be extended to accommodate said payment.

---

[5] Paragraph 2 on page 10 of the ED Order provides: [f]urther, the Plaintiff is to receive one half of 85.55% (the marital portion) of the Defendant's monthly Weyerhaeuser Pension Retirement benefits. The Plaintiff shall receive 42.775% of said benefits. Specifically, Plaintiff is to receive a monthly payment as set forth herein and said payment is to be effective as of March 1, 2009. Defendant shall pay directly to Plaintiff, 42.665% of all benefits received (net of taxes) due to Plaintiff between the March 1, 2009 and the date the QDRO takes effect. Moreover, Defendant shall pay this amount within one week of entry of this Order."

**SO ORDERED.**

**END OF ORDER**